**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
TIFFANY TROY and
ERIC JOHN MATA,
*on behalf of themselves and on behalf of others*      Case No. 23-cv-03053
*similarly situated,*

                              Plaintiffs,

                v.

AMERICAN BAR ASSOCIATION
                              Defendant.
------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

 

Troy Law, PLLC
Aaron B. Schweitzer
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorney for Plaintiffs*

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................... ii

**PRELIMINARY STATEMENT** .............................................................................................. 1

**STATEMENT OF FACTS**....................................................................................................... 2

**LEGAL STANDARD** ............................................................................................................... 4

**ARGUMENT** .............................................................................................................................. 5

    **I.**    **PLAINTIFFS ALLEGE A BREACH OF IMPLIED CONTRACT** ............................. 5

        **A.**  Plaintiffs Allege the Existence of an Agreement ............................................. 5

        **B.**  Plaintiffs Allege their own Adequate Performance......................................... 6

        **C.**  Plaintiffs Allege Breach of Agreement by the ABA........................................ 6

        **D.**  Plaintiffs Allege Damages Stemming from the Breach ................................. 7

    **II.**   **PLAINTIFFS ALLEGE DECEPTIVE ACTS OR PRACTICES** ............................ 8

        **A.**  Under Section 349 of the New York General Business Law ............................ 8

        **B.**  Under the Texas Deceptive Trade Practices Act............................................. 9

    **III.**  **DETERMINATION OF PLAINTIFF'S CLASS CLAIMS IS PREMATURE**...... 12

**CONCLUSION** ........................................................................................................................ 12

**TABLE OF AUTHORITIES**

**Cases**

*Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656 (S.D. Tex. 2021) ......... 9

*Am. Surgical Assistants, Inc. v. United Healthcare of Tex., Inc.*, No. 09-cv-00774 (KPE), 2010 U.S. Dist. LEXIS 30878, 2010 WL 1340557 (S.D. Tex. Mar. 30, 2010).................................. 9

*Amstadt v. U.S. Brass Corp.*, 919 S.W. 2d 644 (Tex. 1996).............................................................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 4

*Balk v. N.Y. Inst. of Tech.*, 683 F. Appx. 89 (2d Cir. 2017) (summary opinion) ........................... 5

*Bell Atl. Corp. v. Twombly*, 500 U.S. 544 (2007) ........................................................................ 4

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-cv-00541 (ARR) (JO), 2016 WL 7243541, 2016 U.S. Dist. LEXIS 172767 (E.D.N.Y. Dec. 12, 2016) . 12

*Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374 (E.D.N.Y. 2012) ....................................... 12

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006).............................................................. 4

*Cohen v. Northeast Radiology, P.C.*, No. 20-cv-01202 (VB), 2021 WL 293123, 2021 U.S. Dist. LEXIS 16497 (S.D.N.Y. Jan. 28, 2023) ............................................................................ 5, 8, 9

*Dobroff v. Hempstead Union Free Sch. Dist.*, No. 21-cv-01567, 2022 U.S. Dist. LEXIS 180000, 2022 WL 4641128 (E.D.N.Y. Sep. 30, 2022)............................................................................ 4

*Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557 (2d Cir. 2011)....................................... 5

*Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735 (W.D.N.Y. 2017) .................................. 9

*In re GE/CBPS Data Breach Litig.*, No. 20-cv-2021 U.S. Dist. LEXIS 146020, 2021 WL 3506374 (S.D.N.Y. Aug. 4, 2021) ......................................................................................... 7, 8

*Kassman v. KPMG LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013)................................................. 12

*Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) .............................................................. 5

*McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264 (S.D.N.Y. 2021) ..................................... 5, 8

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ................................................................ 8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y. 2d 20 (1995)...................................................................................................................................... 8, 9

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-cv-06198 (LAK) (JCF), 2008 U.S. Dist.

*LEXIS 2932, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008)* ....................................................... 12

*Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. Oct. 4, 2017) .................. 5, 8

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004) .................................................................................. 4

*Whitfield v. ATC Healthcare Servs., LLC*, No. 22-cv-05005 (JMA) (LGD), 2023 U.S. Dist.
  LEXIS 147602 (E.D.N.Y. Aug. 22, 2023) ............................................................................ 7, 8

*Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560 (S.D.N.Y. 2012) ............................................... 12

**Statutes**

N.Y. Gen. Bus. L. § 349(a) ............................................................................................................ 8

TX Bus. & Com. L. § 1746(a) ..................................................................................................... 10

TX Bus. & Com. L. § 1746(b) ..................................................................................................... 10

Plaintiffs, by and through undersigned counsel, hereby submit the following memorandum of law in opposition to Defendant's motion to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs allege a breach of implied contract inasmuch as they allege that as dues-paying ABA members and purchasers of ABA merchandise who registered accounts on ABA's website pursuant to its privacy policy, they entered into an implied contract with Defendant to secure their personal identifying information; that by paying their dues and the costs of their purchases they performed under the contract; that Defendant breached the implied contract by failing to implement policies to secure Plaintiffs' personal identifying information, by undermining its IT Department's ability to enforce the policies that were implemented by underfunding, understaffing, and mismanaging it, by permitting third parties to access Plaintiffs' and other members' information for ten days, and by disseminating a notice that misrepresented and downplayed the extent of the data breach or of the ancillary harms that could flow from the disclosure of the data it did admit was breached; and that they suffered damages.

Plaintiffs adequately alleged deceptive acts and practices by Defendant, including exaggerating the stringency of its security measures, omitting to disclose that its underfunding and mismanagement of its IT Department had undermined even those security measures, and by downplaying the severity of the Breach. These acts and omissions are pleaded with sufficient particularity under the Texas statute.

To the extent Plaintiff's Amended Complaint is dismissed, the dismissal should not be with prejudice and Plaintiffs should be permitted another opportunity to amend. Plaintiff Mata first advanced claims in the Amended Complaint, and Defendants' premotion letter did not address them.

1

## STATEMENT OF FACTS

Tiffany Troy is a citizen of the State of New York and a registered member with ABA since August 2018, who made purchases from ABA between August 2018 and the commencement of this lawsuit. *See* Am. Cplt. ¶ 12. Eric John Mata is a citizen of the State of Texas and a registered member with ABA since 2022, who made purchases from ABA between then and his joining this lawsuit. *See* Am. Cplt. ¶ 13. Defendant requires members and customers to disclose personal identifying information and processes member dues credit and debit card payments and customer credit and debit card payments. *See* Am. Cplt. ¶ 14; *see also* Ex. 1 (ABA fee schedule). It encourages members and customers to use its online interface by promoting a data protection policy. *See* Ex. 2 (ABA privacy policy). A portion of the services purchased from ABA by Plaintiffs and the Class necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of personal identifying information, including their credit and debit card information. Because Plaintiffs and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiffs and the Class incurred actual monetary damages in that they overpaid for the services purchased from ABA. *See* Am. Cplt. ¶ 31.

On March 6, 2023, an unidentified hacker acquired unauthorized access to the ABA network, and retained that access through at least March 17, 2023, when Defendant first took action to restrict their access. *See* Am. Cplt. ¶¶ 16, 17. Defendant not only failed to restrict access to members' and customers' personal identifying information for ten days, it underfunded and mismanaged its IT department leading to derelict enforcement of such data-protection policies as it maintained. *See* Am. Cplt. ¶¶ 18–19. Approximately 1.5 million ABA members became victims of a data breach when their personal information was taken from Defendant's information systems. *See* Am. Cplt. ¶ 15.

The hackers who accessed this personal information have wasted no time in putting it to

nefarious use. *See* Am. Cplt. ¶ 16. In particular, Plaintiff Troy received numerous "spam" text messages as a result of the leak of her personal identifying information. *See* Am. Cplt. ¶ 35. Plaintiff Troy received spam text messages including but not exclusively on June 8, 2023, June 20, 2023, June 26, 2023, July 6, 2023, July 12, 2023, August 16, 2023, August 23, 2023, and August 24, 2023. *See id.* Prior to the leak, Plaintiff Troy received spam text messages only about once or twice per year. *See id.* Many of the text messages were in the Chinese language or referenced Plaintiff Troy's Chinese-speaking ability, indicating a leak of personal language information. *See id.* On or about July 31, 2023, an unknown third party attempted to fraudulently and without authorization use Plaintiff Troy's Amazon Business Rewards Visa credit card from Chase Bank to make a purchase of $1,087.65 from Best Buy. *See* Am. Cplt. ¶ 36. Plaintiff Troy was forced to replace her credit card on or about July 31, 2023, and received the replacement in the mail on or about August 2, 2023. *See id.* The temporal proximity of the Breach and the attempted identity theft strongly suggests that the third party who breached Defendant's data storage gained access to Plaintiff Troy's telephone number and credit card information via the Breach, either directly or by using Plaintiff Troy's user ID and/or password obtained in the Breach to access other accounts with financial information. *See* Am. Cplt. ¶¶ 37–40. As a consequence of her identity's theft, on or about August 1, 2023, Plaintiff Troy purchased Norton LifeLock identity theft protection for $97.98. *See* Am. Cplt. ¶ 41. Plaintiff Mata also received numerous spam emails and telephone calls as a result of the leak of his personal identifying information. *See* Am. Cplt. ¶ 42. Plaintiff Mata received two spam phone calls on July 13, 2023, and one spam phone call on July 16, 2023, that were all marked as "Spam Risk" and "Threat: Severe" by AT&T Active Armor, a security application. *See id.* In addition, Plaintiff Mata received two spam emails on July 11, 2023, fraudulently advertising offers from Dick's Sporting Goods and SAC Rock Enroll. Plaintiff Mata

3

received another spam email on July 21, 2023. *See id.* Plaintiff Mata also received other spam emails that he deleted. *See id.* Plaintiff Mata's email address and telephone number were leaked in the Breach. *See* Am. Cplt. ¶ 43.

Defendant's notice of the Breach to members and customers failed to apprise them of the possibility of their financial information, email addresses, or telephone numbers being disclosed in or as a result of the breach, and indeed downplayed that possibility. *See* Ex. A. Plaintiffs suffered additional damages based on the opportunity cost and value of time that Plaintiffs and the have been forced to expend to monitor their financial and bank accounts as a result of the Breach. *See* Am. Cplt. ¶ 44. Such damages also include the cost of obtaining replacement credit and debit cards. *See id.*

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. *Twombly*, 550 U.S. at 556. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Dobroff v. Hempstead Union Free Sch. Dist.*, No. 21-cv-01567, 2022 U.S. Dist. LEXIS 180000, 2022 WL 4641128, at *4 (E.D.N.Y. Sep. 30, 2022) (citing *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)). A court may also consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

## ARGUMENT

I.   **PLAINTIFFS ALLEGE A BREACH OF IMPLIED CONTRACT**

Defendants argue that Plaintiffs have failed to state a breach of implied contract. Under New York law, which Defendants do not allege does not apply (*see Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law.")), an implied contract "may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Cohen v. Northeast Radiology, P.C.*, No. 20-cv-01202, 2021 WL 293123, 2021 U.S. Dist. LEXIS 16497, at *22 (S.D.N.Y. Jan. 28, 2021) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506–07 (2d Cir. 2009)). An implied contract requires "consideration, mutual assent, legal capacity and legal subject matter." *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 281 (S.D.N.Y. 2021) (citing *Leibowitz*, 584 F.3d at 507). "Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by Plaintiff, (3) breach of contract by the defendant, and (4) damages." *Balk v. N.Y. Inst. of Tech.*, 683 F. Appx. 89, 93 (2d Cir. 2017) (summary opinion), *accord Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. Oct. 4, 2017). Here, Plaintiffs allege each of the elements of a breach of implied contract.

A.   **PLAINTIFFS ALLEGE THE EXISTENCE OF AN AGREEMENT**

Plaintiffs allege they and the class they seek to represent were members of the ABA, and provided it with, *inter alia*, names, addresses, email addresses, phone numbers, credit card data, and hashed and salted passwords, and that ABA also obtained Plaintiffs' IP addresses in the course of their use of its online services. *See* Am. Cplt. ¶¶ 1, 4, 12, 13, 61; *see also* Ex. 2 ("The types of Personal data we collect include, but are not limited to:… names, dates of birth, home and business

5

addresses, email addresses, Internet protocol addresses and mobile/landline business/personal telephone numbers that are provided by our customers… credit and debit card numbers, credit reports, passwords and PIN numbers"). ABA agreed and promised its members, through its privacy policy, to safeguard their information from unauthorized disclosure. *See* Ex. 2 ("The ABA implements commercially reasonable security measures to help protect against unauthorized access to or unauthorized alteration, disclosure, or destruction of data."); *see also* Am. Cplt. ¶¶ 12, 13, 62. Without this implied contract to protect their data, Plaintiffs allege that they would not have entrusted Defendant with their personal identifying information. *See* Am. Cplt. ¶¶ 28–30, 63.

### B. PLAINTIFFS ALLEGE THEIR OWN ADEQUATE PERFORMANCE

As members, Plaintiffs allege they paid dues, including by credit card, in exchange for the benefits of membership, one of which, they allege, was the protection of their personal data. *See* Ex. 1; *see also* Am. Cplt. ¶¶ 12, 13, 14, 61. Plaintiffs also allege they made additional credit card purchases from ABA. *See* Am. Cplt. ¶¶ 12, 13, 14, 61. There is no allegation that Plaintiffs' dues payments or other credit card transactions with the ABA failed to clear and it should be inferred that they did not so fail to clear and that Plaintiffs are in compliance with the terms of their membership in ABA.

### C. PLAINTIFFS ALLEGE BREACH OF AGREEMENT BY THE ABA

Plaintiffs allege that Defendant not only breached its implied agreement by failing to implement commercially reasonable security measures to protect their personal identifying information, *see* Am. Cplt. ¶¶ 40, 64 (hashing and salting user IDs and passwords is inadequate to protect them, as they may be reconstructed), but by defunding and mismanaging—leading to understaffing of and attendant underperformance by—the IT department tasked with carrying out those security measures it did implement. *See* Am. Cplt. ¶¶ 18–19. Moreover, Plaintiffs alleged that Defendant failed to detect and restrict unauthorized access to Plaintiffs' and other members'

6

personal identifying information for more than ten days. *See* Am. Cplt. ¶¶ 16–17, 64. While Plaintiffs allege that Defendant eventually disseminated notice of the data breach, *see* Am. Cplt. ¶ 32, they contend that this notice was not adequate, *see id.* ¶ 7, and moreover *do not* allege that they actually received this notice. Rather, Plaintiffs contend that they received notice of the data breach through a third party news source. *See* Am. Cplt. ¶ 16 n.1 (receiving notice of data breach through "BleepingComputer" on or before Apr. 21, 2023); *c.f.* Dkt. No. 1 (initial complaint by Plaintiff Troy filed Apr. 21, 2023). Further, even if Plaintiffs had received the Defendant's notice, it would have failed to apprise them of all of the harms occasioned by the Breach. Defendant's notice only informs recipients of disclosure of hashed and salted passwords. *See* Ex. A. However, Plaintiffs allege disclosure of data other than the hashed and salted user IDs and passwords identified by Defendants, including their mobile phone information and email addresses, *see* Am. Cplt. ¶¶ 35, 42–43, and with respect to Plaintiff Troy her credit card information, either directly in the Breach or through the use of her user ID and password obtained in the Breach on other sites. *See id.* ¶¶ 36–40.

    **D.**    **PLAINTIFFS ALLEGE DAMAGES STEMMING FROM THE BREACH**

Plaintiff Troy not only "alleges that criminals stole her [personal identifying information and] misused it," but also that "she spent resources remediating and mitigating that misuse." *Whitfield v. ATC Healthcare Servs., LLC*, No. 22-cv-05005 (JMA) (LGD), 2023 U.S. Dist. LEXIS 147602, at *17 (E.D.N.Y. Aug. 22, 2023); *see also* Am. Cplt. ¶ 41. "[A] data breach victim who plausibly alleges a post-breach misuse of [their personal identifying information] may seek associated damages." *Id.* (citing *In re GE/CBPS Data Breach Litig.*, No. 20-cv-2021 U.S. Dist. LEXIS 146020, 2021 WL 3506374, at *15 (S.D.N.Y. Aug. 4, 2021)).

"Multiple courts have found that claims of this nature can defeat a Rule 12(b)(6) motion" for dismissal of breach of implied contract claims. *Whitfield v. ATC Healthcare Servs., LLC*, 2023

7

U.S. Dist. LEXIS 147602, at *17 (citing *In re GE/CBPS*, 2021 WL 3406374, at *12 (Aug. 4, 2021) (implied contract breached by defendant where it failed to "safeguard and protect [employees'] personal and financial information); *McFarlane*, 524 F. Supp. 3d at 282 (implied contract where Plaintiffs alleged that "they were required to provide personal identifying information in exchange for employment" and Defendant "allowed that information to fall into the hands of cyber criminals.")); *see also Sackin*, 278 F. Supp. 3d at 750 ("TransPerfect's privacy policies and security procedures manual—which states that he company maintains robust procedures designed to carefully protect the [personal identifying information] with which it is entrusted—further supports a finding of an implicit promise.") (internal quotation marks and citations omitted).

For all the above-stated reasons, the Court should permit Plaintiffs' breach of implied contract claims to proceed.

## II. PLAINTIFFS ALLEGE DECEPTIVE ACTS OR PRACTICES

### A. UNDER SECTION 349 OF THE NEW YORK GENERAL BUSINESS LAW

"Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service.'" *Cohen*, 2021 U.S. Dist. LEXIS 16497, at *23 (citing N.Y. Gen. Bus. L. § 349(a)). "To successfully assert a Section 349 claim, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.*, at *23–24 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). "New York courts define the term 'deceptive acts and practices' objectively, as 'representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.*, at *24 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y. 2d 20, 26 (1995)). "Claims based on omissions are cognizable 'where the business alone possesses material information that is relevant to the consumer and fails to

8

provide this information.'" *Id.* (quoting *Marine Midland Bank, N.A.*, 85 N.Y. 2d at 26).

Here, Plaintiffs allege that Defendants misrepresented that they would adequately protect Plaintiffs' personal identifying information, *see* Ex. 2 ("The ABA implements commercially reasonable security measures to help protect against unauthorized access to or unauthorized alteration, disclosure, or destruction of data."), but that they did not act to address the breach or inform Plaintiffs of the breach timely and indeed systematically underfunded, understaffed, and mismanaged their IT Department. *C.f. Cohen*, 2021 U.S. Dist. LEXIS 16497, at *24. "Based on these allegations, 'it is at least plausible that [Defendant's] representations in their [Privacy Policy] concerning data security would lead a reasonable consumer to believe that [Defendant was] providing more adequate data security than [it] purportedly [was].'" *Id.* (quoting *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 776 (W.D.N.Y. 2017)) (original alterations omitted). "'It is also at least plausible that [Defendant's] failure to disclose the purportedly inadequate data security measures would mislead a reasonable consumer.'" *Id.*, at *24–25 (citing *Fero*, 236 F. Supp. 3d at 776). "And, as discussed, [Plaintiffs have] sufficiently alleged damages." *Id.*, at *25.

### B. UNDER THE TEXAS DECEPTIVE TRADE PRACTICES ACT

"To prevail on a claim for a violation of the Deceptive Trade Practices Act, consumers must establish that each defendant violated a specific provision of the [Act], and that the violation was a producing cause of the claimant's injury." *Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 669 (S.D. Tex. 2021) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W. 2d 644, 652 (Tex. 1996)). To survive a motion to dismiss, "[t]he pleading standard requires, at minimum, that [plaintiff] both list the specific violations of the relevant chapters, and specify in what way [defendant] violated them." *Am. Surgical Assistants, Inc. v. United Healthcare of Tex., Inc.*, No. 09-cv-00774 (KPE), 2010 U.S. Dist. LEXIS 30878, 2010 WL 1340557, at *3 (S.D. Tex. Mar. 30, 2010).

9

Here, Plaintiffs allege that Defendant violated Section 17.46 of the Texas Deceptive Trade Practices Act. *See* Am. Cplt. ¶ 102. Section 17.46 prohibits "[f]alse, misleading, or deceptive acts and practices in the conduct of any trade or commerce," TX Bus. & Com. L. § 1746(a), and lists nonexhaustive examples. *See* TX Bus. & Com. L. § 1746(b) ("[T]he term 'false, misleading, or deceptive acts or practices' includes, *but is not limited to*, the following acts:…") (emphasis added). Because the enumerated acts in Section 1746(b) is non-exhaustive, it cannot be that a plaintiff must plead any one of them. Here, Plaintiffs plead that Defendant violated the Act "by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs and the other Class members' private financial information, by failing to warn customers of the nature and extent of the Breach." Am. Cplt. ¶ 102. The particular factual allegations underlying that claim pleaded earlier in the Amended Complaint are incorporated in the cause of action by reference. *See* Am. Cplt. ¶ 94. To reiterate, these include that:

- Defendant requires members and customers to disclose personal identifying information and processes member dues credit and debit card payments and customer credit and debit card payments. *See* Am. Cplt. ¶ 14; *see also* Ex. 1 (ABA fee schedule);

- Defendant encourages members and customers to use its online interface by promoting a data protection policy. *See* Ex. 2 (ABA privacy policy).

- A portion of the services purchased from ABA by Plaintiffs and the Class necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of personal identifying information, including their credit and debit card information. Because Plaintiffs and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiffs and the

10

    Class incurred actual monetary damages in that they overpaid for the services purchased from ABA. *See* Am. Cplt. ¶ 31.

- Defendant not only failed to restrict access to members' and customers' personal identifying information for ten days, it underfunded and mismanaged its IT department leading to derelict enforcement of such data-protection policies as it maintained. *See* Am. Cplt. ¶¶ 18–19.

- Plaintiff Mata also received numerous spam emails and telephone calls as a result of the leak of his personal identifying information. *See* Am. Cplt. ¶ 42. Plaintiff Mata received two spam phone calls on July 13, 2023, and one spam phone call on July 16, 2023, that were all marked as "Spam Risk" and "Threat: Severe" by AT&T Active Armor, a security application. *See id.* In addition, Plaintiff Mata received two spam emails on July 11, 2023, fraudulently advertising offers from Dick's Sporting Goods and SAC Rock Enroll. Plaintiff Mata received another spam email on July 21, 2023. *See id.* Plaintiff Mata also received other spam emails that he deleted. *See id.* Plaintiff Mata's email address and telephone number were leaked in the Breach. *See* Am. Cplt. ¶ 43.

- Defendant's notice of the Breach to members and customers failed to apprise them of the possibility of their financial information, email addresses, or telephone numbers being disclosed in or as a result of the breach, and indeed downplayed that possibility. *See* Ex. A. Plaintiffs suffered additional damages based on the opportunity cost and value of time that Plaintiffs and the have been forced to expend to monitor their financial and bank accounts as a result of the Breach. *See* Am. Cplt. ¶ 44. Such damages also include the cost of obtaining replacement credit and debit

cards. *See id.*

For the above-stated reasons, the Court should permit Plaintiffs' deceptive acts and practices claims to proceed.

### III. DETERMINATION OF PLAINTIFF'S CLASS CLAIMS IS PREMATURE

"On a motion to dismiss, 'a motion to strike class claims is considered premature if the issues raised are "the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)"'" *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-cv-00541 (ARR) (JO), 2016 WL 7243541, 2016 U.S. Dist. LEXIS 172767, at *29–30 (E.D.N.Y. Dec. 12, 2016) (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (itself quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-cv-06198 (LAK) (JCF), 2008 U.S. Dist. LEXIS 2932, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008))). "A motion to strike brought under Rule 12 is disfavored because 'it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before the plaintiffs are permitted to complete discovery.'" *Id.*, at *30 (quoting *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012)).

"Here, as in *Kassman,* '[Defendant's] objections go to whether Plaintiffs can satisfy the requirements of Rule 23(a)[] and (b)[]." *Bonn-Wittingham*, 2016 U.S. Dist. LEXIS 172767, at *30 (quoting *Kassman*, 925 F. Supp. 2d at 464). "Therefore, the motion to strike class allegations [should be] denied as procedurally premature, 'without prejudice to the [Defendant's] ability to oppose class certification on these same grounds." *Id.* (quoting *Kassman*, 925 F. Supp. 2d at 464–65 (itself citing *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012))).

### <u>CONCLUSION</u>

For all the reasons stated above, the Court should decline to dismiss Plaintiffs' Amended

12

Complaint. To the extent Plaintiff's Amended Complaint is dismissed, the dismissal should not be with prejudice and Plaintiffs should be permitted another opportunity to amend. Plaintiff Mata first advanced claims in the Amended Complaint, and Defendants' premotion letter did not address them.

Dated: Flushing, NY
October 31, 2023

                                                Respectfully submitted,

                                                */s/ Aaron B. Schweitzer*
                                                Aaron B. Schweitzer
                                                TROY LAW, PLLC
                                                41-25 Kissena Boulevard
                                                Suite 110
                                                Flushing, NY 11355
                                                (718) 762-1324
                                                troylaw@troypllc.com
                                                *Attorney for Plaintiffs*